IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARC KRAMER, KIRIL TRAJCEVSKI, and MATT NYMANN, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | |
| v. | Case No.    11-cv-08758 |
| AMERICAN BANK AND TRUST COMPANY, N.A., SHARON WHEELER, JULIE KLAUS, HARRY S. COIN, and DALE DOLLENBACHER, | Judge:      Hon. Andrea R. Wood |
| Defendants. | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT
AND RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Cameron Davidson
Heninger and Heninger, P.C.
101 W. 2nd St., Ste. 501
Davenport, IA 52801-1815
Office: 563-293-9077
Fax: 563-324-5808
Email: cdavidson@heningerlaw.com

Jeffrey D. Wright
PAPPAS O'CONNOR, P.C.
1617 Second Avenue, Suite 300
Rock Island, Illinois 61201
Telephone: 309.788.7110
Email: jwright@pappasoconnor.com

i

## TABLE OF CONTENTS

Page

I.    **INTRODUCTION**..................................................................................1

II.   **MOTION FOR SUMMARY JUDGMENT**..................................2

III.   **PLAINTIFFS' RULE 56.1 STATEMENT**
      **SUBSTANTIALLY VIOLATES LOCAL RULE 56.1**.................**3**

IV.   **ARGUMENT**.................................................................................4

    **A.**   **Defendants are Entitled to Summary**
       **Judgment on Plaintiffs' IWPCA Claims**.................**4**
      i. *Plaintiffs Cannot Meet the standard for*
        *Summary Judgment on their IWPCA Claims* ........................4
     ii. *As a Matter of Law, Plaintiffs Cannot*
        *Retroactively Apply the IWPCA.* .....................................7
    iii. *The Individual Defendants are Not*
        *Employers under the IWPCA* .........................................9

    **B.**   **Defendants are Entitled to Summary Judgment**
       **on Plaintiffs' FLSA and IMWL Claims**.................**11**
      i. *Plaintiffs Have Failed to Prove They Worked*
        *Over 40 Hours in a Week Without Pay* .............................11
     ii. *It is Undisputed Defendants Did Not Know*
        *and Had No Reason to Know Plaintiffs*
        *Worked Over 40 Hours in a Week*.....................................12
    iii. *Plaintiffs Cannot Meet the Standard for Summary*
        *Judgment to the Extent They Purport to Bring*
        *a Misclassification Claim*................................................15
    iv. *The Individual Defendants are Not*
        *Employers under the FLSA or IMWL*.................................16

    **C.**   **Plaintiffs Are Not Entitled to Summary Judgment**
       **on Their Breach of Contract Claims**.................*12*

    **D.**   **The Individual Defendants are Entitled**
       **to Summary Judgment on Plaintiffs'**
       **Breach of Contract Claims**.................**20**

    **E.**   **Plaintiffs Cannot Establish Damages** .................**22**
      i. *Plaintiffs Have No Evidence of Any Uncompensated*
        *Overtime* ...................................................................22

      ii. *Plaintiffs' Necessary Witnesses on Damages are Barred*..............................24

**F.**    **Defendants are Entitled to Summary Judgment**
       **Because Plaintiffs Cannot Prove the Necessary**
       **Elements of Fraud**.......................................................................**26**

**G.**    **Plaintiffs' Claims are Barred by the Statute of Limitations**...............**31**

**V.**    **CONCLUSION** .........................................................................32

## TABLE OF CASES

Page(s)

**Cases**

*Alexander v. Casino Queen, Inc.*,
739 F.3d 972 (7th Cir. 2014) ................................................................3, 4

*alfaCTP Sys, Inc. v. Nierman*,
2016 WL 687281 (N.D. Ill. 2016) ...............................................................25

*Allegis Realty Investors v. Novak*,
860 N.E.2d 246 (Ill. 2006) ......................................................................7, 8

*Andrews v. Kowa Printing Corp.*,
838 N.E.2d 894 (Ill. 2005) ......................................................11, 12, 13, 24

*Blakes v. Illinois Bell*,
75 F.Supp.3d 792 (N.D. Ill. 2014) ................................................................7

*Boelk v. AT&T Teleholdings, Inc.*,
2013 WL 3777251 (W.D. Wis. 2013) ...........................................................13

*Brown v. Family Dollar Stores of IN, LP*,
534 F.3d 593 (7th Cir. 2008) .....................................................................23

*Cardenas v. Grozdic*,
67 F.Supp.3d 917, 923 (N.D. Ill. 2014) ........................... 9, 10, 16-17, 18

*Caveney v. Bower*,
797 N.E.2d 596 (2003) ...............................................................................8

*Cityescape Garden & Design, LLC v. City of Chicago*,
2015 WL 5675462 (N.D. Ill. 2015) ........................................................20, 21

*Cohan v. Medline Industries, Inc.*,
2016 WL 1086514 (N.D. Ill. 2016) ...............................................................6

*Cook Composite and Polymers Co.*,
2012 WL 4499058 (N.D. Ill. 2012) ................................................................3

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)...................................................................................26

*Driver v. AppleIllinois, LLC*,
2012 WL 4175010 (N.D. Ill. 2012) ...............................................................19

*Equity Builders & Contractors, Inc. v. Russell.*,
    406 F.Supp.2d 882 (N.D. Ill. 2005) ............................................................................ 26-27

*Fletcher v ZLB Behring, LLC*,
    245 F.R.D. 328 (N.D. Ill. 2006) ..................................................................................... 29

*Gaines v. K-Five Const. Corp.*,
    742 F.3d 256 (7th Cir. 2014) .......................................................................................... 13

*Gallardo v. Scott Byron & Co.*,
    2014 WL 126085 (N.D. Ill. 2014) ..................................................................................... 5

*Good v. Zenith Electronics Corp.*,
    751 F.Supp. 1320 (N.D. Ill. 1990) .................................................................................. 30

*Grujich v. Catamaran Inc.*,
    4 F.Supp.3d 994 (N.D. Ill. 2013) .................................................................................... 29

*Hall v. Village of Flossmoor Police Dept.*,
    2012 WL 6021659 (N.D. Ill. 2012) ............................................................................... 3, 4

*Harris v. Board of Edu. Of City of Chicago*,
    2015 WL 5693523 (N.D. Ill. 2015) ............................................................................... 2, 4

*Hess v. Kanoski & Associates*,
    668 F.3d 446 (7th Cir. 2012) ............................................................................................ 5

*Holawqay v. Starasys, Inc.*,
    771 F.3d 1057 (8th Cir. 2014) ....................................................................................... 11

*Hosick v. Chicago State Univ. Bd. of Trustees*,
    924 F.Supp.2d 956 (N.D. Ill. 2013) .................................................................................. 3

*House v. Illinois Bell Telephone Co.*,
    2015 WL 7731866 (N.D. Ill. 2015) ................................................................................. 32

*Independent Trust Corp. v. Fidelity Nat. Title Ins. Co. of New York*,
    577 F.Supp.2d 1023 (N.D. Ill. 2008) .......................................................................... 26, 29

*In re Information Resources, Inc. Securities Lit.*,
    1994 WL 124890 (N.D. Ill. 1994) ................................................................................... 31

*Jones v. City of Chicago*,
    610 F.Supp. 350 (N.D. Ill. 1984) .................................................................................... 25

*King v. Ford Motor Co.*,
    2015 WL 5722606 (N.D. Ill. 2015) ................................................................................... 4

*Langraf v. USI Film Products*,
    511 U.S. 244 (1994) .................................................................................................7

*Mercury Vapor Proc. Techs, Inc. v. Vill. Of Riverdale*,
    545 F.Supp.2d 783 (N.D. Ill. 2008) ................................................. 25 at fn. 5

*Mitchell v. Norman James Constr. Co.*,
    291 Ill. App.3d 927 (1st Dist) 1997) .....................................................................26

*Nagel v. ADM Investor Services, Inc.*,
    65 F.Supp.2d 740 (N.D. Ill. 1999) ........................................................................29

*People v. Einoder*,
    28 N.E.3d 758 (2015) .............................................................................. 8, 9 at fn. 3

*Perez et al v. Comcast et al.*,
    2011 WL 5979769 (N.D. Ill. 2011) .....................................................................31

*PRM Realty Grp. V. Wood*,
    2002 WL 1792063 (N.D. Ill. 2002) .....................................................................28

*Schneider v. Ecolab, Inc.*,
    2015 WL 1402615 (N.D. Ill. 2015) ..................................................................6, 16

*Schneider v. Cornerstone Pints, Inc.*,
    22015 WL 8465001 (N.D. Ill. 2015) ...................................................................13

*Sherman v. Premium Concrete Cutting Inc.*,
    2004 WL 1510030 (N.D. Ill. 2004) .....................................................................31

*Siegel v. Shell Oil Co.*,
    612 F.3d 932, (7th Cir. 2010) ..............................................................................13

*Sommese v. American Bank & Trust*,
    2017 IL App. (1st) 160530, No. 1-16-0530 (May 5, 2017) ...................... 8, 9 at fn. 3

*Springhead LLC v. Solution Publishing, LLC*,
    2015 WL 1280702 (N.D. Ill. 2015) .....................................................................21

*Star Forge, Inc. v. F.C. Mason Co.*,
    2014 IL App (2d) 130527-U ...........................................................................27, 29

*Tamas v. Family Video*,
    2013 WL 1286693 (N.D. Ill. 2013) .....................................................................15

*Thomas v. Weatherguard Const. Co., Inc.*,
    2015 Ill. App. (1st) 142785 (2015) .................................................... 7, 8, 9 at fn. 3

*Turner v. The Saloon, Ltd.*,
    491 F.Supp.2d 767 (N.D. Ill. 2007) ........................................................................................24

*Walton v. United Consumers Club, Inc..*,
    786 F.2d 303 (7th Cir. 1986) .................................................................................................31

*Wilke v. Salamone*,
    404 F.Supp. 2d 1040 (N.D. Ill. 2005) ...................................................................................19

*Zabinsky v. Gelber Grp., Inc.*,
    807 N.E.2d 666 (Ill. App. Ct. 2004) .......................................................................................6

## I.    INTRODUCTION

Plaintiffs purport to bring claims pursuant to the FLSA, IWPCA, and IMWL in addition to breach of contract and fraud claims. Defendant American Bank and the Individual Defendants Sharon Wheeler, Julie Klaus, Harry S. Coin and Dale Dollenbacher are entitled to summary judgment on Plaintiffs' claims. Specifically, Plaintiffs' claims are premised entirely upon their contention that the term "revenue generated" has one universally understood meaning to include "secondary gain", despite the fact that Plaintiffs themselves testified to varying interpretations and rejected outright the meaning alleged in the Complaint. (DSOF ¶¶ 19-24) (Plaintiffs confirming they have "no idea" what revenue generated means and that they are not even making a claim relative to such.) Plaintiffs are further barred from seeking retroactive application of the IWPCA, which warrants summary judgment on such claims.

Plaintiffs have failed in all material respects to provide evidence to substantiate their claims under the FLSA or IMWL. None of the Plaintiffs were able to prove they worked over forty hours in a week without pay. In fact, numerous Plaintiffs confirmed that they did not work over forty hours and further affirmed they were paid for all time worked at the Bank. (DSOF ¶¶ 3, 12, 40-42, 48-50) Plaintiffs have no evidence of any uncompensated overtime and are unable to produce a witness on damages for the reasons stated herein. Plaintiffs' lack of proof firmly establishes that Plaintiffs cannot establish damages in this case and Defendants are therefore entitled to judgment as a matter of law.

Individual Defendants Sharon Wheeler, Julie Klaus, Harry S. Coin and Dale Dollenbacher all worked at American Bank & Trust at various timeframes during 2002-2012. (SOF ¶¶ 60-63).  Plaintiffs' Complaint alleges that each of these individuals is their "employer" (Dkt. 291), and Plaintiffs have continued to press these individual claims well after it has become

1

apparent that the individual Defendants are not employers under the FLSA, IMWL or IWPCA as a matter of law. The record evidence establishes that Defendants did not control Plaintiffs' wages, hours, or working conditions, and did not hire or fire the Plaintiffs, the primary indicia of an employer/employer relationship. In fact, as set forth more fully herein, most of the Plaintiffs have never met or even communicated with any of the individual Defendants, making it impossible for any Plaintiff to maintain wage/hour claims, or fraud claims, against these individuals. Finally, Plaintiffs' Second Amended Complaint Count V (Breach of Contract/Skimming of Wages) is confusingly subtitled as brought against "All Defendant (sic) AB&T" (Dkt. 291, p. 16), yet makes no allegations regarding the individual Defendants. As such, Count V should be summarily dismissed against the individual Defendants.

## II.     MOTION FOR SUMMARY JUDGMENT

The Court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. [1] Fed. R. Civ. P. 56(a). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Harris v. Board of Edu. of City of Chicago, 2015 WL 5693523, at *7 (N.D.Ill. 2015). Additionally, the nonmoving party must show that a reasonable jury could retain a verdict in the nonmoving party's favor. Id. At summary judgment, the court's analysis of facts is expressly limited to "evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." Id.

---

[1] Plaintiffs purport to seek summary judgment "as to liability on all Counts of the Complaint." However, Plaintiffs' Motion for Summary Judgment focuses exclusively on American Bank. Counts I, II, III, IV, VI, and VII allege claims against all Defendants and Count V is unclear whether it is pled against all Defendants or just American Bank. To the extent Plaintiffs' Motion for Summary Judgment is sought against all Defendants, this Resistance is deemed a response on behalf of all Defendants, including those individually named, in accordance with the Court's order to consolidate the Bank and Individual Defendants' Motion for Summary Judgment with their Resistance to Plaintiffs' Motion for Summary Judgment. (Dkt. 593)

To obtain summary judgment, Plaintiffs must bring a motion with specific factual assertions based upon admissible record evidence, which includes depositions, documents, ESI, affidavits, declarations, admissions and interrogatory answers. Fed. R. Civ. P. 56(c). Local Rule 56.1 provides the method of making factual assertions in support of summary judgment, which requires moving parties to submit a Rule 56.1 Statement of Material Facts, which "shall consist of short number paragraphs, including within each paragraph specific references to the affidavits, parts of record and other supporting materials relied upon to support the facts set forth in that paragraph." N.D.Ill. L.R. 56.1. As this Court has noted, "[t]he purpose of Rule 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner: it is not intended as a forum for factual or legal argument." Cook Composite and Polymers Co., 2012 WL 4499058, at n. 1 (N.D. Ill. 2012).

Rule 56.1 Statements must also be premised upon admissible evidence that is in the record of the case at issue. Rule 56.1 statements cannot be premised upon evidence that constitutes hearsay. Hosick v. Chicago State Univ. Bd. of Trustees, 924 F.Supp.2d 956, 974 (N.D. Ill. 2013), or for which a proper evidentiary foundation has not been laid. Alexander v. Casino Queen, Inc., 739 F.3d 972 (7th Cir. 2014) (outside/non-party depositions need to consist of admissible evidence and be part of the record in the instant case). Summary judgment "evidence" does not include "argument, conclusions and assertions that are unsupported by the documented evidence of record offered in support of the statement." Hall v. Village of Flossmoor Police Dept., 2012 WL 6021659 at *6 (N.D. Ill. 2012) (Lee, J.) (internal citations omitted).

### III. PLAINTIFFS' RULE 56.1 STATEMENT SUBSTANTIALLY VIOLATES LOCAL RULE 56.1

Plaintiffs' Rule 56.1 Statement is riddled with LR 56.1 violations. (Dkt. 460) The Statement contains many assertions that are argumentative, constitute legal conclusions, and fail

to cite to record evidence. Rule 56.1 does not permit argument or conclusions, or allegations that are not supported by citations to the record. <u>Hall</u>, 2012 WL 6021659, at *6.; <u>Harris</u>, 2015 WL 5693523, at n. 6, (striking assertions from the record that "are unsupported by the documented evidence of record offered in support of the statement.")

Plaintiffs' Statement also improperly references deposition testimony from other cases, involving different plaintiffs, defendants, and claims. The Seventh Circuit has allowed the use of deposition testimony involving non-parties in particular circumstances, none of which are present here. <u>Alexander</u>, 739 F.3d at 974 (deposition testimony from other cases can only be used to support summary judgment when it is: (1) included in the record in which the depositions are being used, not just the record of the lawsuit in which the depositions were taken; and (2) equivalent to an affidavit – based on personal knowledge, with respect to matters upon which the witness is competent to testify, and must set forth facts admissible in evidence). Additionally, prior deposition testimony can only be provided in support of summary judgment where the deponent/declarant has been disclosed in the present lawsuit's Rule 26(a)(1) disclosures. <u>King v. Ford Motor Co.</u>, 2015 WL 5722606, at *5 (N.D. Ill. 2015) (Lee, J.) To the extent Plaintiff's Rule 56.1 Statement violates LR 56.1 and binding case law, Defendants ask that Plaintiffs' Statement be stricken or otherwise disregarded by the Court.[2]

## IV. ARGUMENT

### A. Defendants are Entitled to Summary Judgment on Plaintiffs' IWPCA Claims.

         *i. Plaintiffs Cannot Meet the Standard for Summary Judgment on Their IWPCA Claims.*

---

[2] Defendants previously raised Plaintiffs' L.R. 56.1 violations in their Motion for Summary Judgment and Resistance to Plaintiffs' Motion for Summary Judgment (Dkt. 497). Since that filing, Plaintiffs' refiled Statement modified the improperly numbered paragraphs but Plaintiffs failed to remedy the remaining substantive violations.

To prevail on their IWPCA claims, Plaintiffs must show they each had a valid contract or employment agreement. Gallardo v. Scott Byron & Co., 2014 WL 126085, at *14 (N.D. Ill. 2014). "An employer and an employee, by acting in a manner consistent with an employment agreement, can set the material terms of the agreement, including the amount of compensation." Id. (internal citation omitted) While the IWPCA requires an employer to "honor his contract," it does not confer compensation rights "that are absent from the employee's contract or employment agreement." Id. There is no claim under the IWPCA unless the employer and employee agreed to certain compensation. Id. Thus, the IWPCA mandates the pay Plaintiffs seek here only to the extent the parties' contract or agreement requires such pay. Hess v. Kanoski & Assocs., 668 F.3d 446, 453-54 (7th Cir. 2012). There must be a "manifestation of mutual assent" on the part of the employer and the employee. Gallardo, at *14.

Plaintiffs' IWPCA claims are premised entirely upon their contention that the term "revenue generated" is contained in their employment contracts. [Dkt. #459, pp. 9-10] However, it is undisputed that the term "revenue generated" was not included in all of the Plaintiffs' employment agreements, and that even in those instances where it was included, it was not understood by a number of the Plaintiffs to include "secondary gain." (DSOF¶¶15-17) For example, Jose Sanchez testified he has no idea what "secondary gain" means and is not making any claims relative to secondary gain as part of this lawsuit. (DSOF¶¶19-20) Plaintiff Trajcevski testified that he is not sure whether "revenue generated" included taking out expenses for the Bank, and that the term "revenue generated" is not defined by his employment agreement. (DSOF¶¶21-23) Plaintiff Nyman has no understanding of the terms "revenue generated" or "secondary gain" and is unsure whether the "skimming" alleged in Plaintiffs' Second Amended Complaint refers to his commissions or not. (DSOF¶24).

5

Plaintiffs further erroneously contend it is undisputed that secondary gain should have been included in "revenue generated" as the term is used in some of the Plaintiffs' employment contracts. Plaintiffs have not pointed to any language in any of the employment contracts indicating that "secondary gain" was to be included as "revenue generated." *See*, Cohan v. Medline Industries, Inc., 2016 WL 1086514, *9 (N.D. Ill. 2016) (dismissing plaintiffs' IWPCA claims where plaintiffs failed to prove an agreement entitling them to the commissions they sought, and noting that "[o]f all the agreement language cited by the Plaintiffs, there is no indication that the calculation of commissions would exclude the effect that a decline in sales had upon that growth" as claimed by plaintiffs).

In fact, the term "revenue generated" is highly disputed and American Bank has litigated two previous breach of contract cases regarding the terms of commission payments such as those contested by Plaintiffs here, with two different juries reaching opposite conclusions as to what should be included as "revenue generated." (DSOF¶26) The Bank's course of conduct in not including secondary gain within the term "revenue generated" demonstrates there was never a manifestation of mutual intent that secondary gain would be included in calculating the Plaintiffs' commissions. *See*, Schneider v. Ecolab, Inc., 2015 WL 1402615 at *5 (N.D. Ill. 2015) ("What [the plaintiff] overlooks is that he needs to establish 'a manifestation of mutual assent' from *both* parties about the purported terms of his employment agreement.  What *he* claims to have understood is only half the equation.")(emphasis in original), citing, Zabinsky v. Gelber Grp., Inc., 807 N.E.2d 666, 671 (Ill. App. Ct. 2004). Thus, Plaintiffs' motion for summary judgment as to their IWPCA claims must be denied and Defendants are entitled to summary judgment on Plaintiffs' IWPCA claims.

ii.  *As a Matter of Law, Plaintiffs Cannot Retroactively Apply the IWPCA*

Plaintiffs seek to retroactively apply provisions of the IWPCA which grant rights that did not exist under the IWPCA prior to 2011. Specifically, in 2011, the IWPCA was amended, in pertinent part, to (1) include a private right of action without being required to first exhaust administrative remedies (820 ILCS 115/11(d) and 820 ILCS 115/14(a)), (2) permit employees to bring class actions on behalf of others similarly situated (820 ILCS 115/11(d)), (3) broaden the scope of the definition of "employer" to include "any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of [the IWPCA]," (820 ILCS 115/13) and (4) include enhanced damages including the addition of a 2% interest penalty as set forth in Section 14, which now states:

> "Any new employee not timely paid wages, final compensation, or wage supplements by his or her employer as required by this Act shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payments during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."
> 820CS 115/14(a).

Whether an amendment to a statute will be applied prospectively or retroactively is a matter of statutory construction. Thomas v. Weatherguard Construction Co., Inc., 2015 Ill. App. (1st) 142785 (2015). When called upon to determine whether an amended statute may be applied retroactively, Illinois courts are to follow the two-step approach set forth by the United States Supreme Court in Langraf v. USI Film Products, 511 U.S. 244 (1994), Allegis Realty Investors v. Novak, 860 N.E.2d 246 (Ill. 2006). Under Landgraf, courts first determine if the legislature has clearly indicated the temporal reach of the amended statute, that expression of legislature must be given effect, absent a constitutional prohibition. If, however, the amended statute contains no express provision regarding its temporal reach, the court must go on to determine

whether applying the statute would have a retroactive impact, "keeping in mind the general principle that prospectivity is the appropriate default rule." Allegis, 860 N.E.2d at 253.

In Caveney v. Bower, the Supreme Court noted that Illinois courts will rarely need to go beyond step one of the Landgraf analysis. Caveney v. Bower, 797 N.E.2d 596, 603 (2003). This is true because an amendatory act which does not itself contain a clear indication of legislative intent regarding its temporal reach will nevertheless be presumed to have been framed in view of the provisions of section 4 of the Statute on Statutes (5 ILCS 70/4). The Illinois Supreme Court has applied Landgraf and confirmed that procedural statutory amendments may be applied retroactively while substantive statutory amendments may not. People v. Einoder, 28 N.E.3d 758 (2015) (internal citations omitted). Even if a statutory amendment is procedural, it may not be applied retroactively if the statute would have a retroactive impact. Weatherguard, 2015 Ill. App (1st) 142785 at *P67.

In an Illinois state court lawsuit involving nearly identical IWPCA claims by a former American Bank employee, the Circuit Court for Cook County, Illinois held that the IWPCA cannot be applied retroactively to pre-2011 claims, in the manner sought by Plaintiffs here, based on binding Illinois Supreme Court and Illinois appellate court precedent. (DSOF¶59)  The 2011 amendments providing the rights set forth above are substantive amendments (or amendments which otherwise would have a retroactive impact) to the IWPCA that cannot be applied for pre-2011 liability. Weatherguard, 2015 Ill. App (1st) 142785 at *P67.   Plaintiffs' damages disclosures, and the contracts referenced in their motion for summary judgment, all involve pre-2011 claims. (DSOF¶47). Most recently, the Illinois Court of Appeals affirmed the bar on retroactive application of the IWPCA. Sommese v. American Bank & Trust, 2017 IL App. (1st) 160530, No. 1-16-0530 (May 5, 2017). In Sommese, the Court barred a claim for damages under

8

the IWPCA where the payments at issue occurred "sometime before the effective date of the [IWPCA] amendment" in 2011. Id. Therefore, Plaintiffs are barred from recovering statutory damages for the alleged nonpayment or underpayment of wages accruing before January 1, 2011. For these reasons, Plaintiffs' IWPCA claims fail as a matter of law and Defendants are entitled to summary judgment on those claims.

### iii. The Individual Defendants are Not Employers Under the IWPCA.

Plaintiffs further attempt to hold the individual Defendants liable under the Illinois Wage Payment and Collection Act (IWPCA), alleging in Count IV the Second Amended Complaint that all of the "Defendants" were contractually obligated to pay, and failed to pay, certain commissions to the Plaintiffs.[3] (Dkt. 291, Second Amended Complaint, ¶¶ 69-70). The IWCPA applies an even more rigorous standard to determine individual liability, which Plaintiffs here also fail to meet. Cardenas v. Grozdic, 67 F.Supp.3d 917, 923 (N.D. Ill. 2014). The Cardenas opinion, 76 F.Supp.3d at 924, aptly analyzed the two provisions of the IWPCA that purport to give rise to individual liability, noting that these provisions must be read in tandem pursuant to Illinois Supreme Court precedent established in Andrews v. Kowa Printing Corp., 217 Ill.2d 101, 838 N.E.2d 894, 899-900 (Ill. 2005). One of these provisions is 820 ILCS 115/2, which defines an employer as those persons "acting directly or indirectly in the interest of an employer in

---

[3] Even if Plaintiffs could establish purported "knowing violations" of the IWPCA, they are barred from bringing such claims pre-2011 against the individual Defendants. People v. Einoder, 28 N.E.3d 758 (2015). Section 115/13 of the IWPCA did not become effective until January 1, 2011 and prior versions of the IWPCA did not contain the provision regarding "knowing violations." Illinois state appellate courts have held that these provisions constitute substantive amendments to the IWPCA and therefore cannot be applied retroactively. Thomas v. Weatherguard Construction Co, Inc., 2015 Ill. App. (1st) 142785 (2015); Sommese v. American Bank, 2017 IL App (1st) 160530 (May 5, 2017). Please see Section IV(A)(ii) herein of Defendants'Memorandum in Support of its Motion for Summary Judgment for further analysis.

relation to an employee." The second provision, 820 ILCS 115/13, provides that any of a corporation's officers or agents who "knowingly permit" their employer to violate the IWPCA "shall be deemed to be the employers of the employees of the corporation."

Interpreting these provisions of the IWPCA conjunctively, in accordance with <u>Andrews</u>, there is no evidence that Defendants Wheeler, Coin, Dollenbacher or Klaus "knowingly permitted" any alleged IWPCA violation. *See*, <u>Cardenas</u>, 76 F. Supp. 3d at 924 (holding company president who did not oversee plaintiff's daily work, set his work schedule, or arrange his compensation did not knowingly permit IWPCA violation, and thus cannot be an employer under the IWPCA). As in <u>Cardenas</u>, 76 F. Supp. 3d at 924, there is a "dearth of evidence" demonstrating that Defendants Wheeler, Klaus, Coin and Dollenbacher never negotiated the terms of Plaintiffs' varying employment agreements or knowingly breached any of their provisions regarding commissions, as alleged by Plaintiffs. (DSOF ¶ 64-66, 70-73, 75, 79, 81, 85). To the contrary, Plaintiffs' sworn Interrogatory Answers consistently state they are not alleging the individual Defendants had any contractual obligations to them, negotiated any contracts with them, or withheld any commissions from them – they simply reiterate that the individual Defendants should be held responsible for these contractual terms based solely on their positions with the Bank. (DSOF ¶ 85). As stated above, Plaintiffs have repeatedly denied that any of the individual Defendants controlled their wages, hours or terms of employment. Plaintiffs again seek to rely solely on the individual Defendants' positions with American Bank, which cannot serve as the foundation for "knowingly permitted" violations of the IWPCA, which is necessary to establish individual liability. <u>Cardenas</u>, 76 F. Supp. 3d at 924. For all of the aforementioned reasons, the individual Defendants' are entitled to summary judgment on Count IV of the Second Amended Complaint.

**B. Defendants Are Entitled to Summary Judgment on Plaintiffs' FLSA and IMWL Claims.**

        *i. Plaintiffs Have Failed to Prove They Worked Over 40 Hours in a Week Without Pay.*

To prevail on their FLSA overtime claims, Plaintiffs must prove that: (1) they worked overtime without compensation; and (2) American Bank knew or should have known of the overtime work. Blakes v. Illinois Bell, 75 F.Supp.3d 792 (N.D. Ill. 2014). Plaintiffs blindly assert that Plaintiffs routinely worked in excess of 40 hours per week. (P SOF ¶10). However, the record evidence refutes such an assertion. Plaintiffs testified that their work hours varied, that there were weeks when they clearly did not work more than 40 hours, that some took one and two hour lunches, that some performed work for an outside employer while working in their American Bank office during business hours (Sommese) and that some did not regularly work more than 40 hours per week (Paloumpis, Tripp. Gerrity). (DSOF¶¶1-3) As Defendants' previous briefing has exhaustively detailed for the Court, Plaintiffs have submitted highly contradictory evidence of hours allegedly worked.

Plaintiffs must provide some explanation for how they arrived at the hours estimates provided. Blakes, 75 F. Supp. 3d at 807. (See Holawqay v. Starasys, Inc., 771 F.3d 1057 (8th Cir. 2014) (although plaintiff approximated that he worked 60 hours per week, he did not provide evidence regarding specific weeks that he worked overtime and failed to provide a "meaningful explanation" for how he arrived at his final estimate.) Plaintiffs have repeatedly testified that they have no idea how their hours were calculated and that they relied exclusively on their attorneys, not their own recollections, who in turn provided a "range" of potential overtime hours worked. (DSOF¶¶32-35) The ranges concocted by Plaintiffs' counsel are not based on actual, existing time records. In fact, the "ranges" are not even based on information provided directly by the Plaintiffs, who testified that they never provided worked hours estimates to their attorneys. (DSOF¶¶32-35).

11

To compound the matter, Plaintiffs continuously testified that the overtime hours claimed on their behalf were <u>not accurate</u>. (DSOF¶37)

Plaintiffs cannot escape the requirement that they prove they worked overtime without compensation nor can they meet such a burden. Their motion grossly misrepresents the record evidence, specifically alleging "all loan officers were paid commission only" and that "when Plaintiffs did not receive commissions, they received no pay for that pay period." [Dkt. 459, p. 6] Some Plaintiffs were paid a base salary (Norris, Gorsuch) and some Plaintiffs received no commissions at all (Gorsuch). (DSOF¶2)  Some Plaintiffs testified that they regularly worked only 40 hours a week with no overtime. (DSOF¶3) Other Plaintiffs testified that they worked less than 40 hours a week on numerous occasions. (DSOF¶¶40-41) Many Plaintiffs have absolutely no idea if they worked in excess of 40 hours in a week or on how many occasions that may have occurred. (DSOF¶43) Because Plaintiffs have failed entirely to provide any admissible evidence of hours worked over 40 in a week without pay, Defendants are entitled to summary judgment on Plaintiffs' FLSA and IMWL claims.

### ii. It is Undisputed Defendants Did Not Know & Had No Reason to Know Plaintiffs Worked Over 40 Hours a Week.

The second element requires Plaintiffs to prove that American Bank knew or should have known of the overtime worked. Employers have no obligation to pay for work that they did not authorize and did not know about. <u>Blakes</u>, 75 F.Supp.3d at 807. To survive summary judgment dismissal, Plaintiffs must show American Bank had either actual or constructive knowledge that they performed uncompensated overtime work. <u>Id</u>. Proof of one supervisor's knowledge is irrelevant to another supervisor's knowledge. <u>Id.</u> at 808 (One plaintiff's testimony as to his supervisor's knowledge of uncompensated work is irrelevant to whether other supervisors knew about other employee's work.) A nonmovant's burden is not satisfied by unsubstantial assertions,

speculation, or the mere existence of "a scintilla of evidence." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010). Indeed, summary judgment is appropriate when employers would not necessarily have known that their employees were actually working and not being paid. Gaines v. K-Five Const. Corp., 742 F.3d 256, 270-271 (7th Cir. 2014) (Summary judgment for employer granted despite plaintiff's proof of time records showing he arrived to work early, because plaintiff failed to show defendant's knowledge of unpaid overtime.); Boelk v. AT&T Teleholdings, Inc., 2013 WL 3777251, at *7 (W.D.Wis. 2013) (Summary judgment granted where plaintiffs did not produce evidence that they told any of their supervisors or managers that they were working during their lunches without reporting their time.)

Courts require more than speculative or vague evidence of actual or constructive knowledge of unpaid overtime to survive a motion for summary judgment. Blakes, 75 F.Supp.3d at 811. Here, Plaintiffs have failed to provide any uncontroverted evidence to show American Bank had any knowledge they were working overtime that was ever unreported. In fact, Plaintiffs Berry, Gerrity, Gorsuch, and Houdek consistently recorded more than 40 hours and were paid for all overtime. (DSOF¶¶12, 42, 48-50) In fact, Plaintiff Houdek's testimony shows plaintiffs consistently reporting, and being compensated for, more than 40 hours where Houdek was paid for an overwhelming 183 hours of overtime in a brief six month period from January 3, 2011 – July 14, 2011. (DSOF¶¶42, 48-50) There is no conceivable interpretation of the evidentiary record which supports any contention employees were barred from reporting over 40 hours or that time records were manually modified to remain below this alleged threshold. As stated above, many of the Plaintiffs not only reported, but were also paid for, all hours worked in excess of forty. (DSOF¶¶12, 42, 48-50).

The only evidence regarding AB&T's policy on reporting hours is that post-2010 all loan

originators were required to track all hours worked and were required to work only 40 hours, unless they received preapproval for overtime in advance. (DSOF¶¶6-10). In fact, many of the Plaintiffs' employment agreements included an explicit requirement that employees were to keep accurate time records on the Bank's Time Force software for purposes of determining overtime. (DSOF¶7) Plaintiffs do not dispute that they were required to track all hours worked. (DSOF¶6-8) (Plaintiff Kramer acknowledging, and complaining about, requirement to log <u>all</u> hours worked and acknowledging requirement to sign into Time Force "each and every time we are doing anything work-related and sign off each time we are off the clock.") Plaintiffs further concede that AB&T had no way of knowing what hours they worked if the employees failed to accurately report their time on Time Force. (DSOF¶10) (Bank would not be able to know how many hours were worked if Time Force records were not accurate).

Despite the fact that Plaintiffs were aware overtime had to be preapproved and the fact that AB&T policy required Plaintiffs to report "each and every" time they were performing work, Plaintiffs now claim they were not compensated for all hours worked. There is no evidence to support such a contention. It is undisputed that the Plaintiffs reported and were compensated for overtime on a regular basis. (DSOF¶¶4, 12, 42, 48-50) Plaintiffs knew they were to only work more than 40 hours when they obtained authorization from their supervisor. (DSOF¶6) In light of the aforementioned, Defendant is entitled to summary judgment because there is no evidence that Defendant knew or should have known of any hours worked in excess of 40 other than those which were properly reported and subsequently compensated.

> iii. *Plaintiffs Cannot Meet the Standard for Summary Judgment to the Extent Plaintiffs Purport to Bring a Misclassification Claim.*

Generally, misclassification claims are not appropriate for summary judgment because they often require an in-depth factual analysis of whether an employee satisfies the elements of an

exemption. Tamas v. Family Video, 2013 WL 1286693 (N.D.Ill. 2013). Plaintiffs purport to bring their minimum wage/overtime claims based, at least in part, on the contention that it is "undisputed" all loan officers pre-January 2011 were paid commission only. This fact is hotly disputed. (DSOF¶¶2, 27-28)(Norris received base salary of $70,000, Gorsuch was also paid a base salary and bonuses, receiving no commission at all). Moreover, to the extent Plaintiffs purport to rely upon testimony from other cases, Plaintiffs have not established the admissibility of such evidence, that it is a part of the record in this case, or even that the deposition pages cited support the assertions for which they are made by Plaintiffs.

It is undisputed that American Bank became aware of the DOL's reversal of its prior findings of mortgage loan officers as exempt employees and that American Bank immediately began a project to assess reclassifying its mortgage loan officers based on the DOL guidance and the advice of Plaintiffs' attorney. (DSOF¶58). Prior to March 2010, it was the opinion of the DOL that employees performing the job duties of typical mortgage loan officers were exempt under the FLSA. (See, DOL Wage and Hour Division's March 24, 2010 Opinion Letter, 2010 WL 1822423). By seeking summary judgment on behalf of the entire class, Plaintiffs are necessarily including those Plaintiffs whom have wholeheartedly conceded they were paid minimum wage and overtime beginning in January of 2011. Plaintiffs provide no evidence to support summary judgment as to this post-2011 time period, either on a misclassification basis, or as stated above, with respect to minimum wage or overtime.

      *iv.*  *The Individual Defendants are Not Employers Under the FLSA or the IMWL*

Count I of Plaintiffs' Second Amended Complaint seeks to hold individual Defendants Wheeler, Coin, Klaus and Dollenbacher separately liable as "employers" under the Fair Labor Standards Act ("FLSA") (Dkt. 291). The FLSA provides that "any person acting directly or

15

indirectly in the interest of an employer in relation to an employee" is an employer. 29 U.S.C. § 203(d). However, the analysis does not simply end with this definition; as "the mere facts of…officer status in an entity that employed the complaining employee" is not enough to deem an individual defendant an employer. Cardenas, 67 F.Supp.3d at 923. Courts have "stopped short" of defining every manager as an employer, because "[w]ere they to do otherwise, every person with supervisory power over other employees would become liable for a company-employer's FSLA violations." Schneider v. Cornerstone Pints, Inc., 2015 WL 8465001, at *5 (N.D. Ill. 2015).

It is particularly troubling that the named Plaintiffs cannot provide any basis for their claims against individual Defendants Ms. Wheeler, Ms. Klaus, Mr. Dollenbacher, and Mr. Coin, and appear to have sued these individuals solely because they formerly held managerial positions at American Bank. Named Plaintiff Kramer states that he is suing Ms. Klaus solely because she was in charge of Human Resources. (DSOF ¶ 82). Similarly, Plaintiff Kramer's sole basis for suing Mr. Coin is his perception that Mr. Coin "was the boss." (DSOF ¶ 83). Named Plaintiffs Trajcevski and Nyman have no idea why they are suing Ms. Wheeler, and admit that their employment at American Bank did not even overlap with Ms. Wheeler's employment at the Bank. (DSOF ¶¶ 76-77). Further, Trajcevski and Nyman never even interacted with Mr. Coin, as they admit their employment did not overlap with Mr. Coin's employment. (DSOF ¶ 70-71, 81). Named and other plaintiffs admit that they did not report to Dollenbacher, never met Dollenbacher and do not have any information to suggest he personally controlled wages, hours, working conditions, polices or practices related to plaintiffs. (DSOF ¶ 73). Named Plaintiffs are not alone, as opt-in Plaintiffs similarly testified that they sued one or more individual Defendants solely because of their titles, and that many had never met multiple individual Defendants they

16

are seeking to have deemed their employers under the FLSA. (DSOF ¶¶ 64, 70, 73, 79, 81). Only a few Plaintiffs have recognized that they cannot deem any individual Defendants as "employers" when they were not even employed at American Bank during the same timeframe; these Plaintiffs have stipulated to the dismissal of those claims against Defendants Wheeler and Coin. (DSOF ¶¶ 69, 78). Other Plaintiffs, such as Plaintiff Berry, have maintained claims against individual Defendants Dollenbacher and Klaus, even though they openly admit that their employment did not overlap with them. (DSOF ¶¶ 67, 74). These facts alone justify dismissal of the individual Defendants, who clearly have been sued based on title only.

Even those Plaintiffs who claim to have met one or more individual Defendants cannot establish the factors necessary to establish that the individual Defendants (or any one of them) should be deemed employers under the FLSA. Illinois federal district courts generally apply the "economic realities test" to determine whether individuals are FLSA employers. Cardenas, 67 F.Supp.3d at 923. Under the economic realities test, the individually named Defendants must be shown to have: (1) the power to hire and fire the Plaintiffs; (2) actually supervised Plaintiffs or controlled their work schedules or conditions of employment; (3) determined the rate and method of payment to the Plaintiffs; and (4) maintained Plaintiffs' employment records. Id. No one factor is dispositive. Id. The case law is clear that even executives cannot be "employers" under the FLSA when these executives did not hire the wage/hour plaintiffs, supervise them, instruct their work, or control their wages or working hours. Id. Here, Plaintiffs uniformly testified that they did not report to the individual Defendants, and that the individual Defendants did not supervise them, or control their wages, hours or working conditions:

- Plaintiffs testified that Julie Klaus did not have authority to hire or fire them, and did not control their wages, hours, or working conditions. (DSOF ¶ 66)

17

- Ms. Klaus testified that she was not authorized to create, distribute or implement policies without prior approval.  (DSOF ¶ 66)

- Plaintiffs admit that they did not report to Harry Coin (SOF ¶ 11), and that Mr. Coin did not hire or fire them, or control their wages, hours or working conditions, or the policies applicable to them.  (DSOF ¶ 70-71)

- Mr. Coin testified that during his active employment with the Bank, which ended in February 2009 (DSOF ¶ 60), he relied upon the managerial employees of the residential lending division, to oversee loan officers' wages, hours, hiring, firing, and policy implementation and application.  (DSOF ¶ 72)

- Plaintiffs admit that they did not report to Dale Dollenbacher and do not have any information to suggest that Mr. Dollenbacher controlled their wages, hours, working conditions, or the policies/practices related to loan officers (DSOF ¶ 73).

- Numerous Plaintiffs confirmed that Sharon Wheeler did not control their wages, hours or working conditions nor did she administer policies with respect to them.  (DSOF ¶ 79).  Many Plaintiffs were hired, and their agreements regarding wages and hours negotiated and finalized, prior to Ms. Wheeler's employment with American Bank.  Id.

Based on the foregoing undisputed facts, there is no basis to deem any of the four individual Defendants an "employer" under the FLSA.  Cardenas, 67 F. Supp. 3d at 923-24 (summary judgment granted to owner-defendant who was not an employer under the FLSA; no evidence existed that he hired/fired plaintiff, set work hours, wages or schedule. Defendant did not oversee the day-to-day operations of plaintiff's work); Driver v. AppleIllinois, LLC, 2012 WL 4175010, at *6-8 (N.D. Ill. 2012) (denying plaintiffs' motion for summary judgment because individual defendant, who was sole member of entity and was its president/partial

owner, was not employer under FLSA because he did not actually set wages, hire or fire, supervise or control the schedules of any of the class members and did not set wage policies). *See also*, <u>Wilke v. Salamone</u>, 404 F. Supp. 2d 1040, 1051 (N.D. Ill. 2005) (granting dismissal of individual defendant, applying a standard of "control over the FLSA violation" to find that company president was not an employer under the FLSA because he did not instruct plaintiffs to work off- the-clock, did not control their daily work activities, and did not direct that they be terminated when they refused to work off-the-clock). Summary judgment should similarly be granted in favor of Defendants Wheeler, Coin, Dollenbacher and Klaus as to Count I of the Second Amended Complaint, which purports to deem them each an "employer" under the FLSA.

Plaintiffs also seek to have the individual Defendants deemed employers under the Illinois Minimum Wage Law (IMWL) in Counts II and III of the Second Amended Complaint. (Dkt. 291). The facts cited above compel an identical conclusion under the IMWL – as none of these individual Defendants can be deemed an employer. Some courts apply FLSA case law to assess whether an individual is an employer under the IMWL. *See*, <u>Driver</u>, 2012 WL 4165010, at fn. 1, and *7 (applying same FLSA standard to decline to find individual Defendant "personally liable" under FLSA or IMWL at summary judgment stage). Applying the FLSA standard to the facts of this case, Defendants Wheeler, Klaus, Dollenbacher and Coin clearly do not constitute "employers" under the IMWL. There is absolutely no evidence that these individual Defendants controlled Plaintiffs hiring, firing, wages, hours, terms or conditions of employment – as most Defendants are entirely unknown to Plaintiffs and were named solely because of their titles. (DSOF ¶¶ 64-65, 70-71, 73, 76, 79, 81-84). The individual Defendants must therefore be granted summary judgment as to Counts II and III of the Second Amended Complaint.

19

### C. Plaintiffs are Not Entitled to Summary Judgment on Their Breach of Contract Claims

Illinois courts apply the "four corners" rule in interpreting contracts where the language of the contract is facially "unambiguous." <u>Cityscape Garden & Design, LLC v. City of Chicago</u>, 2015 WL 5675462, at *2-3 (N.D.Ill. 2015). When the parties dispute the meaning of a term and the term's use varies by situation, the term is ambiguous and summary judgment is inappropriate. <u>Id</u>. The contract claim alleged by Plaintiffs focuses exclusively on the interpretation of the term "revenue generated." However, the term was not universally included in the contracts of the Plaintiffs. In fact, many contracts do not contain the term "revenue generated" at all. There is no basis to grant summary judgment to all Plaintiffs on these claims when the argument being made has no relevance or relationship to their employment contract.

A contractual term is unambiguous "if a court can ascertain its meaning from the general contract language." <u>Cityescape</u>, 2015 WL 5675462, at *2. Therefore, if a term "can reasonably be interpreted in more than one way due to the indefiniteness of the language," it is ambiguous. <u>Id</u>. (Holding term "full time" is ambiguous because Court could not find from the face of the contract that there is only one reasonable interpretation of the term "full time.") In this case, even the Plaintiffs differ with respect to their interpretation and understanding of the term. (DSOF¶¶15-26) This dissention bears no surprise, in fact, as two juries have reached opposite verdicts with respect to the term "revenue generated," showing the term is not unambiguous as a matter of law. (DSOF¶26) Because the term can reasonably be interpreted in more than one way, it is per se ambiguous, preventing summary judgment. <u>Cityescape</u>, 2015 WL 5675462, at *2. Once a term is deemed "ambiguous," the parties need to provide proof as to how they understood the term. <u>Id</u>. at *3. Here, Plaintiffs have testified that they do not believe revenue generated was meant to include secondary gain and further, that they were properly paid their commissions. (DSOF¶¶15-25)

20

The interpretation of a term in one context does not necessarily mean that the term will be interpreted consistently in another. Therefore, simply because something is deemed "revenue generated" in one context does not automatically mean that the term "revenue generated," included only in <u>some</u> of Plaintiffs' contracts, was intended to mean the same thing for all Plaintiffs. <u>Springhead LLC v. Solution Publishing, LLC</u>, 2015 WL 1280702 (N.D.Ill. 2015). Plaintiffs misrepresent deposition testimony to argue secondary gain is "revenue generated" to the Bank and therefore "revenue generated" by a loan officer constitutes the same thing. The two words have substantially different financial meanings. (DSOF¶18) (Confirming secondary gain and revenue generated are different concepts entirely, that secondary gain was not included as "revenue generated" under the loan originators' contracts and that loan originators were not paid on secondary gain.)

Plaintiffs cannot simply graft the term "revenue generated" in general to establish the meaning of the term with respect to each particular Plaintiffs' contract that may or may not even contain the term. Numerous Plaintiffs have testified that revenue generated (if included in their contract) did <u>not</u> include secondary gain, that they did not interpret the term "revenue generated" to include secondary gain and that they were properly paid under their agreements. (DSOF¶¶15-25). For example, Plaintiff Sanchez has no idea what "secondary gain" means and affirmed he is making no claims relative to "secondary gain" as part of his lawsuit. (DSOF¶19) Tracjevski confirmed that his contract did not define "revenue generated" and that it was possible the term included taking out expenses for the Bank. (DSOF¶21) One individual's interpretation and use of a term does not necessarily mean another will interpret or use the term in a consistent manner or when used in a different context. <u>Id.</u> at *3 ("A word as it is used in everyday conversation does not necessarily have the same meaning as the word would have when appearing in a statute.") Because

21

the term "revenue generated" is ambiguous, as a matter of law by and through prior contradicting jury verdicts and as a matter of undisputed fact by and through Plaintiffs' testimony, Plaintiffs' Motion for Summary Judgment as to their breach of contract claims must be denied.

### D. The Individual Defendants are Entitled to Summary Judgment on Plaintiffs' Breach of Contract Claims.

As pled, it is not clear whether Plaintiffs purport to bring breach of contract claims against the individual Defendants in Count V of the Complaint. (Dkt. 291, p. 16). The Complaint is captioned "Breach of Contract: Skimming of Wages," claims which are confusingly alleged to have been brought against "All Defendant [sic] AB&T." Id. The allegations in Count V solely allege actions by AB&T. Id. The Plaintiffs' sworn interrogatory answers disavow entering into any contracts with any of the individual Defendants, and state that the individual Defendants have no independent contractual obligations. (DSOF ¶ 85). Therefore, Defendants Wheeler, Coin, Klaus and Dollenbacher are entitled to summary judgment on Count V.

### E. Plaintiffs Cannot Establish Damages.

#### i. Plaintiffs Have No Evidence of Any Uncompensated Overtime.

Throughout this case, Plaintiffs have been unable to present any evidence on their damages. Plaintiffs refused to retain a qualified expert witness and instead Plaintiffs' own counsel "computed" the number of hours worked by Plaintiffs. However, Plaintiffs concede that they have no idea how these "damages" were calculated and further openly admit they did not provide any information regarding their hours worked for the calculations. (DSOF¶¶32-37)(Wicklander - no idea where the number of overtime hours reflected in damages were taken from) (Gerrity - no idea how damages calculations were done or where hours worked "were taken from.") The inaccuracy of their damages calculations is merely the first layer of Plaintiffs' inability to produce evidence

of damages.

Even despite their obligation to produce damages calculations, this fatal issue is compounded by the fact that Plaintiffs truly have no idea when they ever performed work for which they were not compensated. (DSOF¶36) (Gorsuch has "no idea" how many uncompensated hours she worked.) Other Plaintiffs blatantly admit they were paid for all overtime worked. (DSOF¶¶42, 44-45) (Wicklander admitting he was paid for all overtime worked in 2011 despite calculations alleging $72,450.58 in damages) (Houdek admitting he was paid for all overtime worked in 2011 despite claiming $54,794.63 in damages for that year). Still other Plaintiffs make no overtime claims at all. (DSOF¶45) Not a single Plaintiff can identify a specific day or time that he/she worked without being compensated. An employee bears the burden of proving that she performed work for which she was not properly compensated. Brown v. Family Dollar Stores of IN, LP, 534 F.3d 593 (7th Cir. 2008). "While this burden is not an unsurmountable one, an employee who brings suit for unpaid overtime compensation bears the burden to prove, with definite and certain evidence, that she performed work for which she was not properly compensated." Id. at 594.

Plaintiffs argue that AB&T failed to maintain accurate records required by the FLSA and that Plaintiffs are therefore only required to produce sufficient evidence showing the amount and extent of uncompensated work as a matter of just and reasonable inference. Blakes, 75 F.Supp. 3d at 813; citing Turner v. The Saloon, Ltd., 491 F.Supp.2d 767, 769 (N.D.Ill. 2007).[4] Numerous Plaintiffs concede that they have absolutely no reason to dispute the accuracy of their timecard

---

[4] Defendants maintain their position that AB&T's records were adequate under FLSA standards when employees reported time and therefore dispute Plaintiffs' assertion of the applicable standard. When the employer's records are adequate, then the records will establish the amount of damages and the general rule precluding recovery of uncertain or speculative damages applies. Blakes, 75 F.Supp.3d at 807. Plaintiffs admit they were required to: (1) track all hours worked, (2) accurately report all hours worked and (3) obtain supervisor authorization for any overtime worked in advance. As such, they provide no evidence to substantiate their position that the time records are inaccurate.

records, showing hours worked. (DSOF¶45) (Gerrity - affirming accuracy of timecards, showing numerous occasions of working less than 40 hours/week) (Sanchez - concedes he was paid for all hours worked). Even assuming, *arguendo*, the "just and reasonable inference" standard applies under these facts, Defendants are still entitled to summary judgment because Plaintiffs have failed in all material respects to prove "the amount and extent of uncompensated work."

ii.   *Plaintiffs' Necessary Witnesses on Damages are Barred.*

Plaintiffs' counsel elected to compute hours worked and damages without first reviewing relevant records or obtaining information from individual class members, all of whom disavow any knowledge as to how the damages calculations were calculated. (DSOF¶32, 37) This Court has previously questioned Plaintiffs' counsel's method of calculating damages, stating:

> "How in the world do you plan to prove your damages if the lawyer in the case or a member of your firm is going to be the witness? There isn't any way on earth that that's going to be allowed."
> (5/27/15 Hearing Transcript, p. 44, L:4-7)

Plaintiffs do not have any personal knowledge as to their damages or damages calculations. (DSOF¶¶34-37). Plaintiffs' counsel will therefore be called as an adverse witness with respect to any alleged damages. However, Plaintiffs' counsel is prohibited from acting as a witness for two reasons. First, Plaintiffs' counsel will be barred as a fact witness under the Illinois Rules of Professional Conduct and applicable case law. Under the advocate-witness rule, a lawyer is prohibited from appearing as an advocate and a witness in the same proceeding.[5] Model Rules of Prof'l Conduct R. 3.7; *see* alfaCTP Sys., Inc. v. Nierman, 2016 WL 687281, at *1 (N.D. Ill. 2016) (applicable disciplinary rules are now the Model Rules of Professional Conduct of the American

---

[5] The advocate-witness rule services several purposes: (1) it eliminates the possibility that the attorney will not be a fully objective witness; (2) it reduces the risk that the trier of fact will confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments and (3) it avoids the appearance of impropriety. Mercury Vapor Proc. Techs, Inc. v. Vill. of Riverdale, 545 F.Supp.2d 783, 787-788 (N.D. Ill. 2008).

Bar Association); <u>Jones v. City of Chicago</u>, 610 F.Supp 350, 353-354 (N.D. Ill. 1984)(Plaintiffs' counsel disqualified under advocate-witness rule to testify as a witness on one of the contested elements of the case).

The dual role Plaintiffs' counsel is trying to play violates Rule 1.7, which examines conflicts of interest between an advocate and a client. Plaintiffs' counsel has an inherent Rule 1.7 conflict of interest with Plaintiffs because counsel has testified adversely and inconsistently with Plaintiffs' testimony. Counsel intends to testify as to overtime hours allegedly worked without compensation despite the fact that Plaintiffs have systematically disavowed the accuracy of such hours and calculations. As such, Plaintiffs' counsel will be barred from representation due to his inherent conflict of interest.

Further, Plaintiffs' counsel will be barred from introducing damages from their own unqualified calculations in direct violation of Fed. R. Evid. 702 and applicable case law. The subject of an expert's testimony must be "scientific knowledge." <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993). The word "knowledge" connotes more than subjective belief or unsupported speculation. <u>Id</u>. at 589-590. Plaintiffs' counsel is not a qualified expert under Rule 702 or <u>Daubert</u> and he clearly lacks the knowledge necessary to attest to damages considering Plaintiffs admit they did not provide <u>any</u> information on hours worked for the calculations. (DSOF¶¶32-37 – Weiss testifying he has a degree in anthropology and a law degree, is not an accountant; Plaintiffs disavowing damages calculations prepared by counsel) Plaintiffs' systematic rejections of their counsels' calculations further affirm their lack of knowledge, skill or general understanding of the "evidence" at issue in the case. <u>Fed. R. Evid. 702</u> (Expert testimony intended to help the trier of fact understand the evidence and must be based on sufficient facts or data). Because Plaintiffs have no evidence and no witnesses to testify as to their damages or "evidence"

25

on damages, Defendants are entitled to summary judgment on their FLSA and IMWL claims.

**F. Defendants are Entitled to Summary Judgment Because Plaintiffs Cannot Prove the Necessary Elements of Fraud.**

Plaintiffs purport to bring fraud claims against the individual Defendants as well as American Bank for fraud by misrepresentation (Count VI) and fraud by omission (Count VII). (Dkt. 291, pp. 20-21) Such claims must be dismissed in their entirety because Plaintiffs cannot prove the requisite elements of fraud. In order to prove a claim of fraud by misrepresentation under Illinois law, Plaintiffs must prove (1) that Defendant made (or omitted) a false statement of material fact; (2) that Defendant knew its statement was false; (3) that Defendant had the indent to induce the Plaintiffs to act; (4) that Plaintiffs "acted in justifiable reliance upon the statement;" and (5) damages resulting from reliance on the statement. Independent Trust Corp. v. Fidelity Nat. Title Ins. Co. of New York, 577 F.Supp.2d 1023, 1037 (N.D. Ill. 2008) *quoting*, Mitchell v. Norman James Constr. Co., 291 Ill. App.3d 927, 940 (1st Dist. 1997); Equity Builders & Contractors, Inc. v. Russell, 406 F. Supp. 2d 882, 888 (N.D. Ill. 2005). To prove their fraud by omission claims, Plaintiffs must show that "(1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages." Star Forge, Inc. v. F.C. Mason Co., 2014 IL App (2d) 130527-U, ¶35.

Plaintiffs wholly fail to prove a single element of fraud as to any of the individual Defendants or as to American Bank. Plaintiffs' inability to prove the necessary elements of their

fraud claims is highlighted by the glaring deficiencies in Plaintiffs' statement of facts. Plaintiffs routinely misrepresent the testimony of Bank witnesses (and in many instances simply fail to make *any* record citations) in support of their conclusory allegation that the Bank concocted a "scheme" to "secretly skim" funds by implementing secondary gain. (See, Defendants' Responses to PSOF 19-31). The record evidence flatly contradicts Plaintiffs' claim that Defendants made any false statements of material fact or otherwise omitted any material fact. (See, Defendants' Responses to PSOF 19-31) Plaintiffs allege the "bank consistently misrepresented to its loan officers that they were receiving commissions based on "revenue generated." (See Plaintiffs' Memorandum, Dkt. 587 at p.12) However, not all of Plaintiffs' employment agreements contain the term "revenue generated," and none of them define the term. (DSOF¶¶ 15-26) Marc Kaye's testimony, taken in an unrelated Iowa state court matter and cited by Plaintiffs, actually refutes Plaintiffs' allegation that secondary gain was created as part of a "scheme" created by the Bank to deprive its loan officers of commissions. (See, Plaintiffs' Ex. 36 at pp. 58-59) Kaye testified that secondary gain was implemented to cover potential, legitimate bank activities such as bulk sales and hedging. (Plaintiffs' Ex. 36 at pp. 58-59) Further, Plaintiffs have offered absolutely no evidence whatsoever that secondary gain from loans sold by the Bank on the secondary market was the "personal production" of each individual Plaintiff.

Although Plaintiffs' Second Amended Complaint alleges that Defendants Dollenbacher, Coin and Klaus controlled the payment of their wages (Dkt. 291, pp. 16-17), that Klaus was directly involved in loan officer hiring and employment agreements and made representations regarding revenue generated to Plaintiffs (Dkt. 291, p. 18), and that Dollenbacher reviewed and approved commission reports intended to mislead Plaintiffs (Dkt. 291, p. 19), the actual evidence

gathered during extensive discovery does not support, and in fact, directly contradicts, these allegations. Plaintiffs themselves admit that Coin, Dollenbacher and Klaus did not control the terms of their employment, or their wages, including commissions. (DSOF ¶¶ 64, 71, 73) Most admit they never met Coin, Dollenbacher or Klaus, and never discussed with them any of the topics alleged by these allegations. (DSOF ¶¶ 64, 73, 79) The only evidence as to Klaus undisputedly proves she did not draft contracts or set wage/commission policies. (DSOF ¶ 85).

Plaintiffs have no evidence that Defendants Klaus, Coin, Wheeler or Dollenbacher, either collectively or individually, made any false or misleading statements to them. (DSOF ¶ 81). This evidence is paramount to maintaining a fraud claim. As this Court has previously noted when dismissing Plaintiffs' original fraud count, these Plaintiffs must allege (and prove) the "who, when, where or how" of the fraud allegations in order to maintain their claims. (Dkt. 288) ; see, *PRM Realty Grp. v. Wood*, No. 02 C 3396, 2002 WL 1792063, at *2 (N.D. Ill. Aug. 5, 2002) (fraud claim dismissed in wage claim case when plaintiff failed to identify specific, objective manifestations of fraudulent intent); *see also*, *Grujich v. Catamaran Inc.,* 4 F. Supp. 3d 994, 1003 (N.D. Ill. 2013) (employer's motion for summary judgment granted as to fraud claims where plaintiff failed to identify evidence that anyone acting on defendant's behalf made a knowingly false statement of material fact, or that plaintiff detrimentally relied on such statement.). Plaintiffs' claim for fraud by omission fails for similar reasons as their claim for fraud by misrepresentation. The record evidence is void of any omissions by individual defendants.

Plaintiffs have also failed to show Defendants *knew* any statements made to any Plaintiffs were false. Indeed, Plaintiffs have offered no evidence supporting their assertion that Defendants knew any portion of Plaintiffs' employment agreements were false. In fact,

28

Plaintiffs have offered no evidence that the Plaintiffs even had commission structures envisioning secondary gain. Plaintiffs have also failed to demonstrate the third and fourth elements of their fraud claims – that Defendants intended any false statement (or omission of material fact) to induce the Plaintiffs to act and that the Plaintiffs acted justifiably in reliance upon any false statement. Independent Trust Corp., 577 F.Supp.2d at 1037; Star Forge, Inc., at ¶35.

Fraud claims rarely present common questions or common answers, and are therefore notoriously difficult to maintain on a class basis. See, Fletcher v. ZLB Behring, LLC, 245 F.R.D. 328 (N.D. Ill. 2006) (internal quotations omitted) Fraud claims are person-specific, and Plaintiffs have failed to make the requisite showing as to "[w]ho said what to whom and when, and who relied on which statements" in order to survive summary judgment dismissal. Nagel v. ADM Investor Services, Inc., 65 F.Supp.2d 740, 746 (N.D. Ill 1999). Plaintiffs have failed to even show each Plaintiff shares a common interpretation of the terms "revenue generated" and "secondary gain." (DSOF¶¶15-26) In fact, many Plaintiffs either agree with the Bank's interpretation of these terms or have no interpretation. Trajcevski defines "revenue generated" as limited to the revenue of each particular loan, which is by definition not the bundling of multiple loans for sale on the secondary market. (DSOF¶22) Trajcevski also agrees that the Bank may well be permitted to deduct amounts from the "revenue generated" before paying its loan officers' commissions. (DSOF¶¶21, 23) Nyman has no understanding of the terms "revenue generated," or "secondary gain" and is unsure whether "skimming" refers to his commissions – he is simply using definitions of these terms created and provided to him by his attorneys. (DSOF¶¶24-25). Plaintiff Jose Sanchez does not know what "secondary gain" is, and is not

making any claims related to secondary gain in his lawsuit. (DSOF¶¶19-20). In fact, Sanchez testified he is not even making *any fraud claims*. (DSOF¶20).

Plaintiffs' broad brush allegations regarding Plaintiffs' class-wide fraud claims are wholly inadequate. Summary judgment is often granted with respect to class-based, common-law fraud claims, because "common-law actions for fraud… require ***each individual*** plaintiff to prove that he relied on the alleged misrepresentation." Good v. Zenith Electronics Corp., 751 F.Supp. 1320, 1323 (N.D. Ill. 1990) (emphasis added) (class action inappropriate for fraud claim in securities market because "it would be extremely difficult" to prove reliance on an individual-by-individual basis, as required by Illinois law); *In re Info. Res., Inc. Sec. Lit.,* No. 89 C 3772, 1994 WL 124890, *2–3, 4–6 (N.D. Ill. April 11, 1994) (requiring actual reliance to show fraud and granting defendant's motion for summary judgment in light of "wholly insufficient" evidence of each plaintiff's reliance). The difficulty of establishing common-law fraud claims on a class-wide basis is compounded where, as is the case here, each Plaintiff is equally alleging fraud by misstatement and by omission against each of the four, individually-named Defendants. The same problems that plagued the class members in Good and In re Information Resources also doom Plaintiffs' fraud claims here. Because Plaintiffs have failed to prove the necessary elements of their fraud claims, Defendants should be granted summary judgment as to Counts VI and VII of Plaintiffs' Second Amended Complaint.

### G. Plaintiffs' Claims are Barred by the Statute of Limitations.

The FLSA has a two-year statute of limitations that is extended to three-years only for willful violations. 29 U.S.C. §255(a). "Under the FLSA, the filing of a lawsuit does not toll the statute of limitations for putative class members and continues to run until the putative class

members file forms consenting to join the action." Perez et al. v. Comcast et al., 2011 WL 5979769 at *2 (N.D. Ill. 2011) (internal citations omitted). "An employer's violation of the FLSA is 'willful,' for purposes of determining the limitations period, if the employer either knew or acted with reckless disregard for whether its conduct was prohibited by the Act. Willful behavior is conduct that is more than simply negligent or unreasonable." Sherman v. Premium Concrete Cutting Inc., 2004 WL 1510030, *3 (N.D. Ill. 2004). Willfulness, for the purposes of the FLSA, denotes "a range of culpability from gross negligence to actual knowledge plus malice depending on the context." Id., quoting Walton v. United Consumers Club, Inc., 786 F.2d 303, 308 (7th Cir. 1986). "Usually, it denotes some highly culpable mental state either actual knowledge that one's acts violate the law or reckless indifference to the law." Id., quoting Walton, 786 F.2d at 308-09. It is the Plaintiffs' burden to establish willfulness, and "requires proof that the defendant's actions were knowing and voluntary and that he knew or reasonably should have known that those actions violated the statute." Sherman, at *3. Plaintiffs have entirely failed to carry their burden of proof necessary to extend the FLSA's statute of limitations from two years to three years, as they have made no showing of any willful violation of the Act by any Defendant. As such, Defendants should be granted summary judgment as to this issue and the two-year statute of limitations should apply.

Many of the opt-in Plaintiffs' claims are entirely outside the FLSA's statute of limitations and are therefore barred. (DSOF¶¶51-57) For example, the FLSA claims of opt-ins Jonathan Baker, Maria Cabrera, Beatriz D'Sanchez, Barbara Lange, Todd Marguerite, and Jose Sanchez are all barred even by the FLSA's lengthier three-year statute of limitations for willful violations. 29 U.S.C. §255; House v. Illinois Bell Telephone Co., 2015 WL 7731866 at *2 (N.D. Ill. 2015). Each of these opt-in Plaintiffs filed their consents to join the class action outside of the three-year statute

31

of limitations.[6] This Court denied Plaintiffs' motion to toll the statute of limitations and the FLSA claims of these particular opt-in Plaintiffs are therefore time-barred. (Dkt. 240) As such, Defendants are entitled to summary judgment on all claims made by Plaintiffs which are barred by the FLSA's two-year, and certainly the three-year, statute of limitations as a matter of law.

## CONCLUSION

WHEREFORE, for the reasons set forth herein and in the accompanying attachments, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment in its entirety and deny Plaintiffs' Motion for Summary Judgment.

Dated: May 19, 2017          Respectfully submitted,

By: */s/ Cameron A. Davidson*
Cameron Davidson
Heninger and Heninger, P.C.
101 W. 2nd St., Ste. 501
Davenport, IA 52801-1815
Office: 563-293-9077
Fax: 563-324-5808
Email: cdavidson@heningerlaw.com
ATTORNEY FOR DEFENDANTS

---

[6] Specifically, the respective termination dates and opt-in dates of these opt-in Plaintiffs are as follows: Baker – employment ended on 4/21/2011 and opt-in date 4/25/2014; Cabrera – employment ended on 9/30/2009 and opt-in date 4/25/2014; D'Sanchez – employment ended on 9/30/2009 and opt-in date 4/28/2014; Lange – employment ended on 3/12/2010 and opt-in date 9/17/2013; Marguerite – employment ended on 12/29/2010 and opt-in date 4/4/2014; Sanchez – employment ended on 9/22/2009 and opt-in date 4/28/14. (DSOF¶¶51-57)

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on May 19, 2017, he caused a true and correct copy of the foregoing **Defendants' Memorandum in Support of Their Motion for Summary Judgment and Defendants' Response in Opposition to Plaintiffs' Motion for Summary Judgment** to be filed electronically. Notice of this filing will be sent to all parties registered on this Court's ECF system by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Cameron A. Davidson*