IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARC KRAMER, KIRIL TRAJCEVSKI, and MATT NYMAN, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  v.<br><br>AMERICAN BANK AND TRUST COMPANY, N.A.,<br><br>  Defendant. | No. 11-cv-08758<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Marc Kramer, Kiril Trajcevski, and Matt Nyman are former loan officers for Defendant American Bank and Trust Co., N.A. ("the Bank") who have brought this putative class action, alleging that the Bank failed to pay legally-mandated minimum and overtime wages, as well as commissions owed under the parties' employment contracts.[1] This case was previously assigned to Judge John Z. Lee, who on March 31, 2017, granted Plaintiffs' motion for class certification and denied the Bank's motion to decertify the collective action previously conditionally certified under the Fair Labor Standards Act. On May 11, 2017, Judge Lee recused himself and the case was reassigned to this Court. Now before the Court is the Bank's Motion to Reconsider or Vacate the March 31, 2017 Memorandum Opinion and Order of Judge John Z. Lee. (Dkt. No. 600.)

---

[1] Plaintiffs initially brought this action against the Bank and several of its managing officers. But after the instant motion was fully briefed, Plaintiffs filed an agreed motion to voluntarily dismiss their claims against the individual defendants (Dkt. No. 628), which the Court granted (Dkt. No. 630). Thus, the Bank is now the only remaining Defendant. This change in the parties does not impact the Court's analysis or decision on the instant motion.

## BACKGROUND

### I.     Procedural Background

In this action, Plaintiffs have brought claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*; and the Illinois Wage Payment and Collection Act ("IWPCA"), 829 ILCS 115/14; as well as for common law breach of contract, fraud by misrepresentation, and fraud by omission. In February 2014, Judge Lee conditionally certified a collective action under the FLSA. (Dkt. No. 240). In November 2015, Plaintiffs moved for certification of a class pursuant to Federal Rule of Civil Procedure 23 on all claims other than their FLSA claim, and in January 2016, the Bank moved to decertify the FLSA collective. (Dkt. Nos. 435, 445.)

Specifically, Plaintiffs sought to certify one class and two additional subclasses. First, with respect to the minimum wage and overtime claims under the IMWL, Plaintiffs sought to certify a class defined as all loan officers employed by the Bank in Illinois at any point during the three-year period preceding the filing of the Complaint through January 2011 ("IMWL Class"). Second, with respect to the allegations that the Bank "skimmed" a portion of the secondary gain off revenue generated by loan officers, Plaintiffs sought to certify two subclasses (collectively, "Skimming Subclasses"). With respect to the IWPCA claims, they sought to certify a subclass defined as all loan officers employed by the Bank in Illinois at any point during the ten years preceding the filing of the case through January 2011 ("IWPCA Subclass"). And with respect to the breach of contract and fraud claims, they sought to certify a subclass defined as all loan officers employed by the Bank at any point in the five years preceding the filing of the case through January 2011 ("Contract and Fraud Subclass").

2

In his March 31, 2017 Opinion, Judge Lee granted Plaintiffs' motion for class certification with respect to the following classes:

(1) The "Illinois Minimum Wage Law Class" is defined as "All loan officers employed by American Bank & Trust Company in Illinois at any point in time from December 9, 2008 through January 2011."

(2) The "Illinois Wage Payment and Collection Act Class" is defined as "All loan officers employed by American Bank & Trust Company in Illinois at any point in time from December 9, 2001 through January 2011."

(3) The "Breach of Contract Class" is defined as "All loan officers employed by American Bank & Trust Company at any point in time from December 9, 2006 through January 2011."

(4) The "Fraud Class" is defined as "All loan officers employed by American Bank & Trust Company at any point in time from December 9, 2006 through January 2011."

Judge Lee also denied the Bank's motion to decertify the previously conditionally-certified FLSA collective action. (Dkt. Nos. 581, 582.)

Prior to the March 31, 2017 decision, on December 7, 2016, Plaintiffs filed a Motion for Leave to Substitute Counsel, seeking to substitute their prior attorneys with attorneys from the law firm of Freeborn & Peters LLP. (Dkt. No. 569.) On December 12, 2016, Judge Lee entered an Order granting the substitution motion, and a Freeborn & Peters attorney subsequently filed an appearance. (Dkt. Nos. 572, 582). On May 11, 2017, Judge Lee recused himself from this case indicating that "one of the parties is represented by a law firm I was associated with during the past five years." (Dkt. No. 589.) The case was subsequently transferred to this Court. (Dkt. No. 598.) The Bank then filed the instant motion, requesting that this Court reconsider or vacate Judge Lee's March 31, 2017 decision. Specifically, the Bank argues that the basis for Judge Lee's recusal was his previous affiliation with Freeborn & Peters and, because that basis existed prior to his March 31, 2017 ruling, that decision should be vacated and reconsidered by a judge who does not have a basis for recusal.

## II. Factual Background

The facts alleged in the Second Amended Complaint are set forth in detail in the March 31, 2017 Opinion. Rather than repeat that factual recitation here, this Court instead provides the following abbreviated summary of the facts relevant to class certification.

Plaintiffs were employed by the Bank as loan officers and were tasked with obtaining mortgage loans for the Bank's customers. As relevant to the FLSA and IMWL class claims, prior to January 2011, the Bank classified loan officers as "sales employees," and based on that characterization did not pay loan officers a minimum wage or overtime wages or track hours or overtime worked, and instead paid them on a commission-only basis. (Dkt. No. 435, Ex. 2, 4/17/11 Allen Dep. at 24–25; Dkt. No. 435, Ex. 3, 5/21/12 Dollenbacher Dep. at 243–45; Dkt. No. 435, Ex. 5, 3/26/15 Klaus Dep. at 76.) Beginning in January 2011, however, the Bank began tracking hours worked and started paying loan officers hourly wages and overtime wages. (Dkt. No. 435, Ex. 7, 3/23/15 Dollenbacher Dep. at 97.) Even after this change, however, the Bank directed loan officers to report only 40 hours per week, regardless of whether the loan officers worked additional hours. (Dkt. No. 456, Pls.' Opp'n Def.s' Mot. to Decertify Collective Action 8–10 (citing testimony of eleven Plaintiffs).)

As relevant to the common law and IWPCA class claims, the loan officers' employment agreements represented that they would be paid monthly commissions as a percentage of "revenue generated" from the loans originated by the loan officer. (Dkt. No. 453, Ex. 3, 18, Employment Agreements.) The Bank had a company-wide policy of setting aside for itself a percentage of the revenue that was generated when a mortgage loan was sold in the secondary mortgage market, *i.e.*, the "secondary gain." (Dkt. No. 435, Ex. 10, 3/31/15 Mann Dep. at 33, 72; Dkt. No. 435, Ex. 9, 11/2/12 Kaye Dep. at 54, 58.) The Bank considered the secondary gain to be

4

the Bank's profit margin. (Pls.' Ex. 9, Kaye Dep. at 58–59.) A loan officer's commissions were therefore a percentage of the total revenue generated from his or her mortgage loans less the secondary gain. (Dkt. No. 435, Ex. 10, 3/31/15 Mann Dep. at 72.)

## DISCUSSION

### I. Defendant's Motion to Reconsider or Vacate

The Bank argues that once a judge recuses himself, the judge's decisions made after the basis for the judge's recusal existed must be vacated. Plaintiffs respond that the Seventh Circuit's decision in *New York City Development Corp. v. Hart*, 796 F.2d 976 (7th Cir. 1986), holds that a judge's decisions need not be vacated when recusal is not required under 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The parties then focus their arguments on whether or not Judge Lee's recusal was required under 28 U.S.C. § 455(a)—with Plaintiffs suggesting that recusal was not required, while the Bank argues that dicta in *Hart* suggests that because judges should not recuse themselves without a basis for doing so, the fact that a judge saw it necessary to recuse himself establishes that his recusal was necessary under 28 U.S.C. § 455(a).[2]

The records before this Court provide no insight into the reason why Judge Lee recommended reassignment or whether or not his recusal was "required" under 28 U.S.C.

---

[2] In *Hart*, the district court judge had denied a motion for his recusal under 28 U.S.C. §455 and at the same time issued substantive rulings on a motion for preliminary injunction and a motion to dismiss. *Hart*, 796 F.2d at 978. The defendant in that case petitioned the Seventh Circuit for a writ requiring the judge to recuse himself and for an order vacating his rulings made after the motion for recusal. *Id*. The judge subsequently changed his mind and recused himself, and the Seventh Circuit was left with the motion to vacate the judge's rulings made between the motion for recusal and the recusal. *Id*. The Seventh Circuit held that where a judge is required to recuse himself after the filing of a motion to disqualify under §455(a), all decisions taken after the filing of the recusal motion should be vacated. *Id*. at 979. In addition to the significant differences in procedural posture between *Hart* and the present case, *Hart* was also decided pre-*Liljeberg*, and its applicability post-*Liljeberg* is questionable, as *Liljeberg* holds that vacatur is not a required remedy for all § 455(a) violations. *Liljeberg*, 486 U.S. 847 (1988).

§ 455(a) or otherwise. The Court need not speculate on this matter, however. Contrary to the Bank's argument, a court is not required to vacate decisions made by a judge after the basis for the judge's recusal occurs, regardless of whether the judge's recusal was required. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988) ("There need not be a draconian remedy for every violation of § 455(a) . . . Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty."); *see also School Asbestos Litig.*, 977 F.2d at 786 ("[V]acatur of rulings ought to be as limited as possible while remaining consistent with the purposes of § 455."). Indeed, *Liljeberg* dictates that even final judgments issued by a judge who should have recused himself under § 455(a) do not require vacatur. *Liljeberg*, 486 U.S. at 864.

Given *Liljeberg* and the fact that decisions on class certification are interlocutory decisions subject to review at any time before final judgment, the Court declines to entertain a motion to vacate the March 31, 2017 Opinion and Order. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Instead, with respect to class certification, "a district court has the continuing responsibility to determine that the class meets the Rule 23(a) prerequisites." *Culver v. City of Milwaukee*, 1999 WL 962393, *4 (7th Cir. Oct. 15, 1999) ("[The deciding judge] had undertaken such an inquiry when the case was assigned to [her], and it certainly would have been appropriate for the [transferee judge] to have continued that inquiry when the case was transferred to [her] docket.");[3] *see also Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) ("[A] traditional Rule 59(e) motion to reconsider[] [] can only follow a 'judgment.' . . . Rule 54(b) governs non-final orders

---

[3] The Court notes that *Culver v. City of Milwaukee* is an unpublished opinion and therefore not precedential. The Court nevertheless finds it useful for comparison given its similar posture.

and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court to reconsider [a non-final order].").

Generally, "[i]n the absence of materially changed or clarified circumstances, or the occurrence of a condition on which the initial class ruling was expressly continue, courts should not condone a series of rearguments on the class issues by . . . the opponent of the class." [4] *Parish v. Sheriff of Cook County*, No. 07 C 4369, 2016 WL 1270400, at *1 (N.D. Ill. March 21, 2016) (quoting 3 W. Rubenstein, A. Conte &H. Newberg, Newberg on Class Actions §7:47 (4th ed. 2011)). Here, the Bank has not identified any changes in law or fact. In this instance, however, given the certifying judge's recusal as well as the Court's "continuing responsibility" to determine that Rule 23's requirements are satisfied, the Court will entertain the Bank's request for reconsideration and exercise its discretionary authority to reconsider the original class ruling. *Culver*, 202 F.3d 272, *4.

The Court has therefore undertaken an independent assessment of the parties' arguments on Rule 23 class certification and decertification of the FLSA collective action. *Culver*, 202 F.3d at 272. After such review, for the reasons discussed below and in greater detail in the March 31, 2017 Opinion, the Court agrees with the original decision granting Plaintiffs' motion for class certification and denying the Bank's motion to decertify the FLSA collective action.

---

[4] *See also Gilbert v. Ill. State Bd. of Educ.,* 591 F. 3d 896, 902 (7th Cir. 2010) ("[L]aw-of-the-case principles are applicable when a case is transferred to a new judge midway through litigation; in general, the successor judge is discouraged from reconsidering the decisions of the transferor judge . . . .The successor judge should depart from the transferor judge's decision only if he has a conviction at once strong and reasonable that the earlier ruling was wrong, and if rescinding it would not cause undue harm to the party that had benefitted from it."); *but see Galvan*, 678 F.3d at 587 ("[T]he law of the case doctrine applies with less force in this case since the prior order was interlocutory . . . .").

## II. The Parties' Arguments on Class Certification

After independently assessing the parties' arguments, the Court agrees with the decision to grant Plaintiffs' motion for class certification. For the purposes of brevity and conservation of judicial resources, the Court provides an abbreviated Rule 23 analysis below and refers the parties to the March 31, 2017 Opinion for a more fulsome analysis.

To be certified, a proposed class must satisfy the four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy of representative"). Fed. R. Civ. P. 23(a). If Rule 23(a) is satisfied, the proposed class must then fall within one of the three categories in Rule 23(b), which the Seventh Circuit has described as: "(1) a mandatory class action (either because of the risk of incompatible standards for the party opposing the class or because of the risk that the class adjudication would, as a practical matter, either dispose of the claims of non-parties or substantially impair their interests), (2) an action seeking final injunctive or declaratory relief, or (3) a case in which the common questions predominate and class treatment is superior." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011).

"On issues affecting class certification . . . a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012). Rather, the named plaintiff bears the burden of showing that a proposed class satisfies each requirement of Rule 23 by a preponderance of the evidence. *Id.* Certification is proper "only if the trial court is satisfied, after a rigorous analysis" that the prerequisites of Rule

23 have been satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (internal quotations omitted).

### A. Rule 23(a) Analysis

#### 1. Numerosity

Plaintiffs have identified evidence demonstrating that in 2009, the Bank employed 47 loan officers in Illinois and an additional 11 loan officers in Iowa. (Mem. Op. at 8, citing Pls' Reply Ex. 2.) These numbers are sufficiently large to make joinder impracticable for each of the proposed classes. *See, e.g.*, *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement."). Thus, the proposed classes meet Rule 23(a)'s numerosity requirement.

#### 2. Commonality

"Fed. R. Civ. P. 23(a)(2) requires that there be questions of law and fact common to the class. . . . The fact that there is some factual variation among the class grievances will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1017–1018 (7th Cir. 1992).

With respect to the IMWL Class, the Court agrees with the conclusion in the March 31, 2017 Opinion that Plaintiffs have submitted sufficient evidence to demonstrate that class members share common questions of law and fact because the Bank classified loan officers as employees exempt from minimum wage and overtime laws and paid loan officers on a commission-only basis. (Dkt. No. 435, Ex. 2, 4/17/11 Allen Dep. at 24–25; Dkt. No. 435, Ex. 3, 5/21/12 Dollenbacher Dep. at 243–45; Dkt. No. 435, Ex. 5, 3/26/15 Klaus Dep. at 76.) A question of law common to this class is therefore whether such a classification and exemption were proper, based

on common proof regarding the nature of the work performed by loan officers. The Bank's arguments to the contrary fail because, despite the purported differences between class members that the Bank identifies, the Bank itself classified all loan officers as exempt from minimum wage and overtime laws, and paid loan officers only on a commission basis. *See, e.g., Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 184 (S.D. Ohio 2012) ("[Y]et all of these purported crucial differences were not enough to stop Defendant from . . . classify[ing] [its loan officers] as exempt from [overtime pay] requirements . . . .").

With respect to both Skimming Subclasses, Plaintiffs have established that the classes present a number of common questions. Plaintiffs identified evidence that the loan officers' employment agreements provided that their commissions would calculated on "revenue generated" from the loans originated by the loan officers and that the Bank had a policy of setting aside for itself a percentage of revenue from mortgage loans sold on the secondary-mortgage market. (Dkt. No. 453, Ex. 3, 18, Employment Agreements; Dkt. No. 435, Ex. 10, 3/31/15 Mann Dep. at 33, 72; Dkt. No. 435, Ex. 9, 11/2/12 Kaye Dep. at 54, 58.) Common questions of fact and law therefore include what was included as "revenue generated" as that term was used in the employment agreements, and specifically, whether "secondary gain" was included. This is sufficient to meet the commonality requirement. That individual class members had different damages does not defeat commonality, nor does the Bank's argument that different plaintiffs interpreted common contract provisions differently. *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) ("[T]he need for individual damages determinations does not, in and of itself, require denial of [a] motion for certification."); *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("[C]laims arising from interpretations of a form contract appear to present the classic case for

treatment as a class action . . . ."); *Rosario,* 963 F.2d at 1018 ("The fact that there is some factual variation among the class grievances will not defeat a class action.").

With respect to the Contract and Fraud Skimming Subclass, the Bank also argues that fraud claims are generally not appropriate for class action treatment because they are "person-specific" and therefore cannot be resolved as a class. Def.s' Mem. at 8–9 (quoting *Nagel v. ADM Investor Servs., Inc.*, 65 F. Supp. 2d 740, 746 (N.D. Ill. 1999), aff'd 217 F.3d 436 (7th Cir. 2000).) The Bank suggests that this case is no exception by pointing to testimony from named Plaintiffs suggesting they do not share a common interpretation of the terms "revenue generated" or "secondary gain." But the Court the Bank is mistaken: where, as here, the purported fraud is based on alleged conduct uniform to all class members, "it is well established that individual issues of reliance do no thwart class actions of common law fraud claims." *Sparano v. Southland Corp.*, No. 94 C 2098, 1996 WL 681273, at *3 (N.D. Ill. Nov. 21, 1996) (certifying common law fraud class).

With respect to the IWPCA Skimming Subclass, the Bank argues that class claims are barred because they are premised on pre-2011 allegations, and the IWPCA did not allow class action claims until January 2011. The Bank suggests this was a substantive change and therefore cannot be applied retroactively, citing *Thomas v. Weatherguard Construction Co., Inc.*, 2015 Ill. App. (1st) 142785 (2015). But again, the Bank is mistaken. The ability to bring a class action is a procedural right and can therefore be applied retroactively. *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408–09 (2010).

### 3. Typicality

A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the

same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The typicality requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Id*.

Plaintiffs have satisfied the typicality requirement for all of the proposed classes. The class representatives were loan officers employed by the Bank prior to January 2011 and were compensated on a commission-only basis, with employment agreements providing that commission was calculated based on "revenue generated." They were not paid minimum wages or overtime.

The Bank argues that the named plaintiffs are not typical because: (1) they were not employed by the Bank during the entirety of the class period; (2) they lack understanding of the issues in the case; and (3) they have differing damages calculations. As explained in the March 31, 2017 Opinion, however, none of these arguments defeat the typicality requirement. Where a class representative's claims arise from the same course of conduct and the same legal theory that is alleged by the class, typicality is satisfied. *De La Fuente*, 713 F.2d at 232. The class representatives have sufficient incentive to litigate the case because, like the putative class members, the class representatives were subject to the Bank's treatment of loan officers as exempt employees as well as the Bank's alleged skimming scheme. Contrary to the Bank's arguments, a named plaintiff's lack of understanding of the issues in a case is insufficient to prevent certification, and the same is true with respect to individual damages questions. *See Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 365–66 (1966); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 671 (7th Cir. 2015) ("It has long been recognized that the need for individual damages determinations at [a] later stage of the litigation does not itself justify the denial of certification.").

4. **Adequacy of Representative and Counsel**

"To determine whether the class representatives will adequately represent the class as a whole, courts examine whether: (1) the representatives have antagonistic or conflicting claims with the other class members; and (2) the counsel for named plaintiffs can sufficiently represent the class." *Birnberg v. Milk St. Residential Assocs. Ltd. P'ship*, No. 02 V 0978, 2003 WL 21995177, at *2 (N.D. Ill. Aug. 20, 2003) (citing *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

The Court agrees with the finding in the March 31, 2017 Opinion that Plaintiffs have met the adequacy requirement. The Bank's arguments as to the adequacy of the class representatives are the same as its typicality arguments and are rejected for the same reasons. The Bank also puts forward a number of arguments asserting that class counsel is inadequate. The March 31, 2017 Opinion addresses each argument in turn. This Court agrees with that decision's well-reasoned conclusions and thus will not repeat them here.

B. **Rule 23(b) Analysis**

Plaintiffs seek to litigate this class action under Rule 23(b)(3), which states:

A class action may be maintained if Rule 23(a) is satisfied and if...the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Thus, the Court considers whether questions of law or fact common to the proposed classes predominate and whether a class action is superior to other available methods for fairly and efficiently adjudicating the class claims.

"Generally, predominance is satisfied when common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication. In other words, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. The presence of some individual questions is not fatal, but individual questions cannot predominate over the common ones." *Kleen Prod. LLC v. Int'l Paper*, 306 F.R.D. 585, 593 (N.D. Ill. 2015) (internal quotations and citation omitted and alteration in original).

Plaintiffs have met the requirements of Rule 23(b)(3) for each proposed class. As noted in the March 31, 2017 Opinion, there are a number of common issues applicable to all putative class members and central to the resolution of this action, including whether the Bank improperly classified its loan officers as exempt employees and whether the Bank had a policy of deducting an amount from the revenue generated from the secondary sales of loans prior to calculating loan officer commissions. With respect to the IMWL Class, as discussed in detail in the March 31, 2017 Opinion, the Bank's argument that individual damages issues will predominate over common questions fails to defeat certification. Plaintiffs propose a class-wide method of calculating damages that would measure only the damages attributable to the claimed violations, and the Bank's argument that differences in schedules, hours, and days predominate is unavailing. *E.g.*, *Alvarez v. Chi.*, 605 F.3d 445, 449 n.1 (7th Cir. 2010) ("[R]ecovery will be determined by the application of mathematical formulae common to all class members, although the specific variables (number of hours worked, hourly wage, etc.) will vary from individual to individual.");

*Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification."). The Bank's argument that individual issues will predominate because Plaintiffs have no way of establishing that they worked in excess of 40 hours per week similarly fails. As detailed in the March 31, 2017 Opinion, Plaintiffs should not bear the burden of any violation by the Bank to fulfill its statutory duty to keep proper records. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016).

With respect to the Skimming Subclasses, the Bank's argument that individualized issues predominate because loan officers had different interpretations of the meaning of "revenue generated" also fails to defeat certification. The Bank's attempt to use subjective evidence to suggest ambiguity is not convincing. *See Home Ins. Co. v. Chi. & Nw. Transp. Co.*, 56 F.3d 763, 768 (7th Cir. 1995) ("Subjective evidence of ambiguity is 'the testimony of the parties themselves as to what they believe the contract means, which is invariably self-serving, inherently difficult to verify and thus, inadmissible."). The Bank also argues that two contradictory jury verdicts involving the same breach of contract claim show that individual issues of contract interpretation will predominate. This argument also fails, as there are many reasons why certain claimants succeed at trial while others do not.

\* \* \*

For the foregoing reasons, this Court adopts the conclusion in the March 31, 2017 Opinion that the requirements of Rule 23(a) and 23(b)(3) have been met and that proceeding as a class action is a superior method for fairly and efficiently adjudicating the claims in this case. The

Court therefore confirms the prior certification under Rule 23(b)(3) of the classes identified in the March 31, 2017 Opinion. Specifically:

(1) The "Illinois Minimum Wage Law Class" is defined as "All loan officers employed by American Bank & Trust Company in Illinois at any point in time from December 9, 2008 through January 2011."

(2) The "Illinois Wage Payment and Collection Act Class" is defined as "All loan officers employed by American Bank & Trust Company in Illinois at any point in time from December 9, 2001 through January 2011."

(3) The "Breach of Contract Class" is defined as "All loan officers employed by American Bank & Trust Company at any point in time from December 9, 2006 through January 2011."

(4) The "Fraud Class" is defined as "All loan officers employed by American Bank & Trust Company at any point in time from December 9, 2006 through January 2011."

### III. Collective Action Under FLSA

The March 31, 2017 Opinion also denies the Bank's Motion to Decertify Collective Action.

"Under Section 216(b) of the FLSA, employees may bring a collective action on behalf of themselves and other 'similarly situated' employees against employers who violate the Act's minimum wage or overtime provisions." *Smallwood v. Ill. Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010) (quoting 29 U.S.C. § 216(b)). While neither the statute nor the higher courts have specified a standard for certifying a collective action, "the majority of courts . . . have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Jirak v. Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008). First, a court decides whether to conditionally certify a collective action by evaluating whether the plaintiff can demonstrate that similarly-situated individuals exist. If a court finds this standard has been met, the court conditionally approves the collective action and allows notice to be sent to similarly situated employees, who have the opportunity to opt in. *See Heckler v. DK Funding, LLC*, 502 F.

Supp. 2d 777, 779 (N.D. Ill. 2007). Judge Lee granted conditional certification in this case on February 12, 2014. (Dkt. No. 240.)

Next, a court reevaluates the appropriateness of certification after members of the collective have opted in and the parties have conducted discovery. *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010). "The Court must consider: (1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Franks v. MKM Oil, Inc.*, No. 10 C 13, 2012 WL 3903782, at *10 (N.D. Ill. Sept. 7, 2010).

As noted in the March 31, 2017 Opinion, the analysis regarding whether to proceed as a collective action under 216(b) concerns many of the same issues addressed when determining class certification under Rule 23. The Bank's arguments in support of decertification track its arguments under Rule 23 class certification. And for the same reasons Plaintiffs met the requirements of Rule 23, they also met their burden to show that the opt-in plaintiffs are similarly-situated under Section 216(b). The Court further agrees with the conclusion in the March 31, 2017 Opinion that the Bank's additional arguments in support of its motion to decertify the FLSA class and not included in its opposition to Plaintiffs' Rule 23 motion do not justify decertification. The March 31, 2017 Opinion addresses these arguments in depth and the Court will not repeat the discussion here. Suffice to say, this Court declines to decertify the previously conditionally certified FLSA collective action. The FLSA collective action remains defined as: "All loan officers employed by American Bank & Trust's Mortgage Division from June 12, 2009, to the present, who were paid on a commission basis and who were not paid minimum wage or overtime compensation." (*See* Notice to FLSA Class, Dkt. No. 260.)

## CONCLUSION

For the foregoing reasons, the Court denies the Bank's motion to vacate the March 31, 2017 Memorandum Opinion and Order but grants the Bank's motion to reconsider the same, in the limited sense that this Court has conducted an independent assessment of the parties' arguments regarding Rule 23 class certification and decertification of the conditionally-certified FLSA collective. After doing so, this Court concludes that the issues covered by the March 31, 2017 Memorandum Opinion and Order were correctly decided and those rulings should stand.

ENTERED:

Dated: August 24, 2018

_____
Andrea R. Wood
United States District Judge